**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert SMITH, Defendant–Appellant.**

No. 87–1789.

United States Court of Appeals, Tenth Circuit.

Sept. 8, 1988.

Richard L. Hathaway, Asst. U.S. Atty., Topeka, Kan. and Benjamin L. Burgess, U.S. Atty., with him on the brief, for plaintiff-appellee.

Allan A. Hazlett, Topeka, Kan., for defendant-appellant.

Before HOLLOWAY, Chief Judge, BARRETT, Senior Circuit Judge, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant (Smith) was convicted and sentenced on five counts of distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1).[1] The sales involved relatively small quantities of drugs, none over a gram and a half. Appellant raises five issues on appeal: (1) denial of disclosure of identity of a confidential informant; (2) wording of the so-called "Allen" charge; (3) denial of a "procuring agent" instruction; (4) denial of directed verdict for defendant; (5) assessment of $50 on each count pursuant to 18 U.S.C. § 3013. We affirm.

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. It is there enacted that:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

## I—*Confidential Informant*

The law is clear that the name of a confidential informant may be kept confidential and need not be disclosed to a criminal defendant unless under the circumstances of the case disclosure is required in the interests of fairness and in the light of defendant's specific need for the information in preparing his defense. *Roviaro v. U.S.*, 353 U.S. 53, 61–62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957).[2]

■ In the case at bar it is plain that the informer simply introduced the agents to appellant. The informant did not negotiate or participate in any of the sales. The agents dealt directly with appellant and made what are commonly called "controlled sales." The informant was simply peripheral to the transactions.

The identity of the informer is as irrelevant to this prosecution as the identity of the person who introduced the couple would be in a prosecution for rape or in a divorce proceeding.

Moreover, it appears from Appellant's Brief, p. 4, that: "The informant's name was known to the defendant and disclosed at trial." That being so the point is moot, as there was no harm to defendant. There would be no point in having the government officially proclaim or acknowledge the informant's status as informant. *Lex non cogit ad vana.*

## II—*The Allen Charge*

■ The so-called "Allen" or "dynamite" charge derives its name from *Allen v. U.S.*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The purpose of such a charge is to encourage unanimity (without infringement upon the conscientious views of each individual juror) by urging each juror to review

2. Most of the cases requiring disclosure deal with the reliability of the informer in connection with assessment of probable cause in a case of search without a warrant. 353 U.S. at 61. The case at bar does not involve any search at all or raise any question relating to the informant's credibility.

and reconsider the evidence in the light of the views expressed by other jurors, in a manner evincing a conscientious search for truth rather than a dogged determination to have one's own way in the outcome of the deliberative process. In short, the substance of the *Allen* charge is the salutary admonition of Oliver Cromwell: "I beseech you in the bowles [bowels] of Christ, think it possible you may be mistaken."[3]

■ The Tenth Circuit law permits the *Allen* charge *in toto* to be given, though with caution, and preferably (as was done in the case at bar) *before* the jury has reached an impasse or deadlock. *U.S. v. Dyba,* 554 F.2d 417, 420–21 (10th Cir.1977).[4]

■ One common elaboration of the *Allen* charge is to admonish the jury that it is unlikely that any other jury of superior ability, or better equipped than the jury now in the box to decide the difficult questions in the case, can be found; and that it would be a waste of time, expense, and effort to give up prematurely the attempt to reach a unanimous decision now, thus requiring retrial of the case before another jury.

Specifically, the language to which appellant objects consists of the italicized words in the second paragraph of Instruction No. 20, which reads as follows:

Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

If you fail to reach a verdict, the parties *will* be put to the expense of another trial and *will* once again have to endure the mental and emotional strain of a trial. If the case is retried, a future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide this case than those of you who compose the present jury. There is no reason to believe that there will be more or clearer evidence produced at a future trial.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges —judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

It is of course true, as appellant's counsel pointed out to the trial judge during the conference on instructions,[5] that there are

---

**3.** To the Scotch clergy, August 3, 1650. Gardiner, *History of the Commonwealth and Protectorate,* 2nd ed. 1897, I, 307.

**4.** Critics of the *Allen* version object to the majoritarian impact of the passage stating

that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. 164 U.S. at 501, 17 S.Ct. at 157.

Although the *Allen* court did make plain that "the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows" [Id.], the version now known in the Third Circuit as the "Aldisert charge" is preferable. *U.S. v. Fioravanti,* 412 F.2d 407, 414–20 (3rd Cir.1969). The distinction is that the "Aldisert" version calls upon *every* juror to reflect upon the correctness of his preliminary appraisal of the evidence, not just the *minority.* There is thus less intimation that the dissenters are presumably wrong and should capitulate in favor of the view espoused by the greater number of jurors.

**5.** Trial Transcript, p. 20.

many reasons why there might not be another trial if the jury fails to reach a verdict.

It would doubtless be more accurate and comprehensive to add to the second sentence of this instruction a qualification such as "unless, for some reason, the case does not have to be tried again, such as if the parties should agree upon a compromise solution, or the Government might choose to not pursue the case further, or witnesses might become unavailable because of death or insanity or illness or absence or other reason." Or, as appellant suggests, "will" could be replaced by "may."

However, we believe such exhaustive amplification is unnecessary and would perhaps simply add to the confusion in the jury's mind when digesting the 23 instructions in 26 pages as given by the District Court.

Such qualifications are impliedly contained in the language used in Instruction No. 20, taken as a whole.

It should be noted that immediately following the second sentence, to which Appellant objects, the third sentence begins by saying "*If* the case is retried, a future jury must be selected &c ..." [italics supplied]

This clearly conveys to the jury the possibility that it *might* happen that for some reason the case would *not* have to be retried. Taken as a whole, as jury instructions must be,[6] it is plain that the Court explained clearly to the jury the point being made, namely that in case of a hung jury the case would have to be retried unless for some reason it would not be necessary or practicable to retry it.

We conclude that there was no harmful error in Instruction No. 20 requiring reversal.

6. *U.S. v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975); *U.S. v. Pinto,* 838 F.2d 426, 435 (10th Cir.1988); *U.S. v. McIntyre,* 836 F.2d 467, 473 (10th Cir.1987).

7. Tr. 133; Appellant's Brief, pp. 9–10.

8. See note 1, *supra.*

### III—*Denial of "Procuring Agent" Instruction*

■ Appellant sought a "procuring agent" instruction, based upon Kansas law.[7] This was denied by the District Court, relying on *U.S. v. Marquez,* 511 F.2d 62, 63–64 (10th Cir.1975). As the late Judge Breitenstein pointed out in his opinion in that case, the "procuring agent" defense is technical, and applies only to the offense of sale, not the broader crime of *distribution* under 21 U.S.C. § 841(a)(1), the offense for which appellant was tried.[8] *Marquez* is the law of the Circuit, and the District Court's ruling did not constitute error.

### IV—*Denial of Directed Verdict*

Appellant contends also that denial of a directed verdict in his favor was erroneous, indeed a denial of due process, citing *In re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1071–73, 25 L.Ed.2d 368 (1970), and *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979), for the platitudinous verity that due process requires for conviction in a criminal case proof beyond a reasonable doubt of every element of the crime charged.[9] The platitude does not benefit appellant however. His invocation of the time-honored rule is almost frivolous. There was abundant evidence upon which a reasonable jury could beyond a reasonable doubt find appellant guilty of every element of the offense for which he was on trial.

### V—*The $50 Assessment*

■ Appellant also assigns as error the assessment of $50 on each count pursuant to 18 U.S.C. § 3013.

It was there enacted by the Congress[10] that:

9. The real question in *Winship* was whether a juvenile court adjudication of delinquency was a criminal proceeding *vel non.* 397 U.S. at 375, 90 S.Ct. at 1078.

10. Apparently as section 1405(a) of a massive appropriations Act, 98 Stat. 1837, 2174–75.

(a) The court shall assess on any person convicted of an offense against the United States—

\* \* \* \* \* \*

(2) In the case of a felony—

(A) the amount of $50 if the defendant is an individual; ...,

(b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.

Plainly, the Congress has here mandated that such a sum shall be "assessed" on any individual convicted of a felony (as appellant was in the case at bar) and "collected in the manner that fines are collected in criminal cases." [11]

Although the point is not expressly argued by appellant, we note also that the District Court was correct in concluding that Congress meant the $50 to be assessed per count of felony, rather than per defendant adjudicated in a single proceeding.

Three circuits have expressly addressed this issue. Each circuit held that 18 U.S.C. § 3013 assessments should be imposed per count rather than per defendant. *United States v. Pagan*, 785 F.2d 378, 381 (2nd Cir.1986) [12]; *United States v. Donaldson*, 797 F.2d 125, 128 (3d Cir.1986); *United States v. Dobbins*, 807 F.2d 130, 131 (8th Cir.1986).

The question has not previously arisen in this Circuit, but we follow the foregoing uniform conclusion reached in the cases which have addressed the issue.

For the foregoing reasons, the judgment of the District Court is

AFFIRMED.

---

11. The District Court is obliged to "assess ... the amount" specified, whatever the reason which animated the Congress to impose such an exaction. The stated purpose was to generate funds to offset the cost of a newly created victim's assistance fund, (although little income was anticipated). *U.S. v. Mayberry*, 774 F.2d 1018, 1019, 1021 (10th Cir.1985). The case at bar is not an assimilated crimes case as was *Mayberry*.

12. *Pagan* also held that the assessment was mandatory, and that indigence did not prevent its *imposition*, though the District Court has discretion as to its *collection* 785 F.2d at 380–81; see also 797 F.2d at 129.