**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dulce HERNANDEZ–GARCIA,
Defendant–Appellant.**

No. 89–2046.

United States Court of Appeals,
Tenth Circuit.

April 23, 1990.

Tova Indritz, Federal Public Defender, Albuquerque, New Mexico, for defendant-appellant.

Presiliano A. Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before SEYMOUR and McWILLIAMS, Circuit Judges, and BRIMMER, District Judge.*

McWILLIAMS, Circuit Judge.

Dulce Hernandez–Garcia (Hernandez) was convicted on three counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). Each count involved a different illegal alien. Hernandez appeals, contending that the district court erred in its instructions to the jury, as well as in its polling of the jury when the verdicts were received. We perceive no reversible error and accordingly affirm.

The jury was instructed that in each count of the indictment Hernandez was charged with knowingly *and* in reckless disregard of the fact that a named individual was an alien who had entered the United States in violation of the law, transported said alien in furtherance of such violation of the law. 8 U.S.C. § 1324(a)(1)(B) (1970).

A subsequent instruction advised the jury that one essential element of the crime charged was that the defendant knew that the alien named in each count of the indictment was not lawfully in the United States *or* was in reckless disregard of the fact that the alien named had entered the United States in violation of the law.

In a written communication to the district court, the jury noted that the indictment charged the defendant with "knowingly and in reckless disregard" of the fact that the person he was transporting was an illegal alien, whereas the subsequent instruction setting forth the essential elements of the crime charged stated that one element was that the defendant "knew ... or was in reckless disregard of the fact" that the person he was transporting was an illegal alien.

* Honorable Clarence A. Brimmer, Chief Judge of the United States District Court for the District of Wyoming, sitting by designation.

The thrust of the jury's inquiry was whether the government had to prove that the defendant both "knew" *and* "was in reckless disregard" of the fact that the person he was transporting was an illegal alien, or whether the government need only show that the defendant "knew" *or* "was in reckless disregard" of the fact that the person he was transporting was an illegal alien. The gist of the district court's response to this inquiry was that the first instruction advised the jury of what was in the indictment, whereas the subsequent instruction advised the jury "what the government must prove beyond a reasonable doubt."

The jury then resumed deliberations and about two hours later sent a second written communication to the district court, which read as follows:

"It appears that we are having a problem reaching a verdict and that it is unlikely that we will be able to agree. What action can we take?"

After consultation with counsel, the district judge, without objection, proceeded to give the jury a so-called *Allen* instruction.[1] However, the district judge first asked the jury if it still had problems with his answer to the jury's first inquiry. When informed that there was still "confusion," the district judge gave a further instruction on that matter. The district judge, after noting that the third essential element of the crimes charged was that the defendant "knew" or "was in reckless disregard" of the fact that the person he was transporting was an illegal alien, spoke as follows:

"This third element means that the government is required to prove beyond a reasonable doubt either of these two things, but not necessarily both."

The district judge next gave the jury the so-called *Allen* instruction, which is set forth in its entirety as Attachment A to this opinion.

The jury resumed again its deliberations and returned guilty verdicts on all three counts about one and a half hours later. The jury was polled, and the first six jurors, when polled, indicated the guilty verdicts were his, or her, verdicts. However, the seventh juror when polled indicated uncertainty. The colloquy between the district judge and the seventh juror, Mr. Jamie L. Lucero, is set forth in its entirety as Attachment B to this opinion.

As indicated, there was no objection to the district court's giving of an *Allen* instruction, nor was there any objection to the content of the instruction itself. Accordingly, on appeal our only concern is whether the giving of the instruction constitutes "plain error." "Plain error," in this context, is error that "affects the [defendant's] fundamental right to a fair and impartial trial." *Burroughs v. United States*, 365 F.2d 431 (10th Cir.1966). We find no such error in the present record.

Although trial counsel did not object to the *Allen* instruction, appellate counsel argues that it is one-sided and "impermissibly coercive" in its effect.[2] Appellate counsel takes particular aim at that part of the *Allen* instruction which states that if the jury should fail to agree on a verdict, "the case is left open and must be tried again." Counsel argues that such statement is incorrect, since, if the present jury should not agree, the government thereafter might elect not to pursue the matter further, or there might be a plea bargain, or for other reasons the matter might not be retried.

The *Allen* instruction which the district court gave the jury in the instant case appears as footnote 4 in *United States v. Bottom*, 638 F.2d 781 (5th Cir.1981). That instruction was prepared by the Committee on Pattern Jury Instructions District Judges Association Fifth Circuit 1975, and provides, *inter alia*, that if "you should

---

1. The *Allen* instruction derives its name from *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

2. An *Allen* instruction is permissible in this circuit, and, although we have suggested it should be used with care and caution, the giving of such instruction even after the jury has commenced its deliberations is not *per se* error. *United States v. McKinney*, 822 F.2d 946, 950 (10th Cir.1987); *United States v. Blandin*, 784 F.2d 1048, 1050 (10th Cir.1986).

fail to agree on a verdict the case is left open and *must* be tried again." (emphasis added). In this regard, however, it is of interest to note that the district judge in *Bottom* replaced the word "must" with "may," so that he instructed the jury that if it did not agree on a verdict "the case is left open and *may* be tried again." (emphasis added). It would appear to us that in this context the use of the word "may" is preferable to the use of "must." Be that as it may, we do not deem such to be reversible error.

*United States v. Smith,* 857 F.2d 682 (10th Cir.1988) sheds light on our present problem. There the district court advised the jury in its *Allen* instruction that if it failed to reach a verdict "the parties *will* be put to the expense of another trial and *will* once again have to endure the mental and emotional strain of a trial" and that "[i]f the case is retried, a future jury must be selected in the same manner and from the same source as you have been chosen ..." (emphasis added). In *Smith* we agreed with the appellant that actually "there were many reasons why there might not be another trial if the jury fails to reach a verdict."

Notwithstanding, in *Smith* we declined to find reversible error in the wording of the *Allen* instruction. We observed that it probably would have been "more accurate" to have added qualifying language such as "unless, for some reason the case does not have to be retried again...." However, we concluded that such "exhaustive amplification is unnecessary."

In *Smith,* counsel made a specific objection in the trial court to that part of the instruction which indicated that the case would be retried should the jury not reach a verdict. In *Smith* we found "no harmful error" in the *Allen* instruction. In the instant case, no objection was made in the trial court to the instruction, and under the rationale of *Smith* we decline to find "plain error."

Hernandez' principal contention in this court is that the district court committed reversible error in its polling of juror Lucero. The district court's polling of juror

Lucero is set forth in Attachment B to this opinion. Counsel points out that the district judge asked juror Lucero five times if the guilty verdicts signed by the jury foreman were his verdicts, and that only on the fifth attempt did juror Lucero give a flat "yes" answer to the inquiry. Such, argues counsel, indicates that juror Lucero was "coerced" by the district judge, and, in a sense, by his fellow jurors, into giving an affirmative answer. From his "coercion" argument, counsel argues that the verdicts in reality were not "unanimous verdicts." We are not persuaded by this line of reasoning.

In *Andres v. United States,* 333 U.S. 740, 748, 68 S.Ct. 880, 884, 92 L.Ed. 1055 (1948), the Supreme Court held that "[u]nanimity in jury verdicts is required where the Sixth and Seventh Amendments apply." Fed.R.Crim.P. 31(a) provides that "[t]he verdict shall be unanimous. It shall be returned by the jury to the judge in open court." Fed.R.Crim.P. 31(d) provides as follows:

"When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not a unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

*United States v. Morris,* 612 F.2d 483 (10th Cir.1979) sheds light on this aspect of the case. In that case we commented as follows:

We start with the proposition that in a federal, criminal case the requirement of unanimity applies not only by reason of F.R.Crim.P., Rule 31(a), but also by reason of the Sixth Amendment. It is a right so fundamental that it may not be waived.

Polling is one means of ensuring unanimity. It is available on request of any party or on the court's own motion. F.R. Crim.P., Rule 31(d). Where upon a poll one or more jurors express some uncertainty as to the verdict, the trial judge is vested with discretion under F.R.Crim.P., Rule 31(d), to direct the jury to retire for further deliberations or to discharge the

jury. Although not expressly so stated in the rule, the power to repoll the jury is also among the judge's discretionary powers. This power is most helpful where, for instance, the jury has been confused by multiple parties or counts.

In any case upon the appearance of any uncertainty or contingency in a jury's verdict it is the duty of the trial judge to resolve that doubt, for "[t]here is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." In the *Cook* case, it was held that the trial court erred by refusing to repoll where an uncertainty as to the verdict developed. There the uncertainty appeared due to a notation on the verdict and the jurors' responses to the initial poll, conditioning the verdict to a strong leniency recommendation. (Footnotes and citations omitted.)[3]

■ Under the rationale of *Morris*, where a juror when polled gives an uncertain or equivocal answer, it would seem that before discharging the jury or directing it to resume its deliberations, a district judge should first attempt to clear up the uncertainty.[4] When first polled, juror Lucero in response to the district court's inquiry as to whether the guilty verdicts were his verdicts said, "Ah, qualifications, yes, sir." Certainly that response warranted additional query. In response to the district court's second inquiry, the juror stated, "Ah, I'll go along with the jury." A third inquiry elicited this response from Lucero: "Just that I went along with the experience and conviction of the majority. I trust in what they believe." The district judge then stated that he must ask the juror "directly again" whether the guilty verdicts were "in fact" his verdicts, to which Lucero stated, "Ahm, with the jury."

At this juncture the district court conferred with counsel at side bar out of the earshot of the jurors. Defense counsel suggested that the juror Lucero be subject to "voir dire" by court, and counsel, in the privacy of the judge's chambers. The district judge eschewed this suggestion and indicated he would ask the juror one more time whether these were his verdicts and ask for a "yes or no" answer. Defense counsel then suggested that the juror be asked to make a "yes or no" answer "if he was able to." The district judge followed this suggestion and inquired of the juror Lucero as follows: "If you can, sir, I must ask you to state either yes or no as to whether or not this is your verdict." To that question, juror Lucero answered, "Yes."

The balance of the jurors when polled answered in the affirmative. Before the jury was discharged, defense counsel again indicated a desire to *voir dire* juror Lucero in chambers "outside the hearing of others." The district judge refused this suggestion, commenting that juror Lucero "is one of the better educated members of the jury," would not appear susceptible to influence, and although he may have had some reluctance, he "has now answered clearly that this is his verdict."

In our view, the district court did not mishandle the polling of juror Lucero. Most certainly when Lucero gave his first equivocal answer, the district court was not required to discharge the jury and declare

3. In *Cook v. United States*, 379 F.2d 966 (5th Cir.1967), the jury returned a verdict finding the defendant guilty as charged, but penciled on the verdict was a request that the court give to the defendant "every degree of leniency possible." Upon the defendant's request, the district court polled the jury and all but two jurors responded that they had found the defendant guilty "based on the note at the bottom." The defendant thereupon asked the district court to repoll the jury in order to clarify the verdict, but the district court refused. On appeal, the Fifth Circuit held that this refusal to repoll was reversible error because of "serious doubt that the jury did not qualify its verdict of guilty by predicat- ing and conditioning it on the request for 'every degree of leniency possible.'" The district court's failure to clarify the uncertainty, when requested to do so by the defendant and when there was an opportunity to do so, was fatal to the verdict. Id. at 971.

4. The fact that in the first instance a juror, when polled, indicates uncertainty "does not require setting the trial at naught" and further inquiry "can serve to clear up apparent confusion" on the part of a juror. *Williams v. United States*, 419 F.2d 740 (D.C.Cir.1960).

a mistrial, or order the jury to resume its deliberations. The preferred route is to first try to clear up the juror's equivocal response. The juror at this point could have said, "No, these are not my verdicts." But he did not make such response. Rather, in response to what we view as limited inquiry, the juror responded that these were indeed his verdicts. In our study of the record the district judge did not coerce the juror into saying, "Yes."

Judgment affirmed.

### Attachment A

Now I'm also going to give you this following instruction and I would appreciate your listening carefully. I am going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case and I have a few additional comments that I would like for you to consider as you do so. *This is an important case. The trial has been expensive in time, effort and money to both the defense and the prosecution. If you should fail to agree on a verdict, the case is left open and must be tried again. Obviously, another trial would only serve to increase the cost to both sides and there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you* (emphasis added). Any further jury must be selected in the same manner from the same source as you were chosen and there is no reason to believe that the case could ever be submitted to 12 men and women more conscientiously or impartial or more competent to decide it, or that more or clearer evidence could be produced. If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought seriously to ask themselves again and most thoughtfully whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of your fellow jurors and whether they should distrust the weight and sufficiency of evidence which fails to convince several of their fellow jurors beyond a reasonable doubt. Remember at all times that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence, but remember, also, that after full deliberation and consideration of the evidence in the case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction. You must also remember that if the evidence in the case fails to establish beyond a reasonable doubt that the accused—that the accused should have a unanimous verdict of not guilty.

Let's see. I'm not sure I read that carefully.

You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty. You may be as leisurely in your deliberations as the occasion may require and should take all the time which you feel is necessary. I would ask now that you retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions that I have previously given to you.

### Attachment B

THE COURT: ... Mr. Lucero, would you please stand, sir. Is this your verdict, Mr. Lucero?

JUROR JAMIE L. LUCERO: Ah, qualifications, yes, sir.

THE COURT: All right. I must ask you whether, in fact, you agree and concur in this verdict in its entirety?

JUROR JAMIE L. LUCERO: Ah, I'll go along with the jury.

THE COURT: Well, I need—I'm sorry, sir, but I must confirm on an individual basis that each of the members of the jury agrees to this verdict, *and if you do not personally agree, I would like for you to tell me that.*

JUROR JAMIE L. LUCERO: Just that I went along with the experience and

conviction of the majority. I trust in what they believe.

THE COURT: Well, then, sir, let me ask you directly again: Is this, in fact, your verdict, Mr. Lucero?

JUROR JAMIE L. LUCERO: Ahm, with the jury.

THE COURT: Okay. Let me ask counsel to approach the bench, if you would, please. You may be seated, Mr. Lucero and Mr. Smith.

.... [District court at this point confers with counsel at side bar.]

THE COURT: Okay. Mr. Lucero, let me ask you to stand again, sir, and let me say this first: It is important that I ascertain that any verdict rendered is the unanimous verdict of the jury and for that reason, we have this process of polling the jury which involves asking each juror separately to confirm concurrence in the verdict. *This is not done to single any one out for purposes of embarrassment and please understand my questioning you is not in that light.*

*If you can, sir,* I must ask you to state either yes or no as to whether or not this is your verdict.

JUROR JAMIE L. LUCERO: Yes.

THE COURT: Thank you, Mr. Lucero. You may be seated.

(Emphasis added.)