USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1399 UNITED STATES OF AMERICA, Appellee, v. THOMAS LUONGO, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Walter Jay Skinner, Senior U.S. District Judge] __________________________ _________________________ Before Breyer, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ _________________________ William A. Brown on brief for appellant. ________________ A. John Pappalardo, United States Attorney, and Duane J. ___________________ _________ Deskins, Assistant United States Attorney, on brief for appellee. _______ _________________________ December 8, 1993 _________________________ SELYA, Circuit Judge. This appeal requires us not only SELYA, Circuit Judge. _____________ to resolve defendant's claim of multiplicitousness, but also to answer a question of first impression in this circuit concerning the special assessment mandated by 18 U.S.C. 3013 (1988). Concluding, as we do, that the indictment is not multiplicitous and that the court below appropriately imposed the special assessment on a "per count" basis, rather than on some broader basis (say, "per scheme" or "per defendant"), we affirm. I I _ Background Background __________ The indictment undergirding this appeal stemmed from defendant-appellant Thomas Luongo's communications with an elderly man, Albert Tompane, between August 1990 and April 1991. Using the name Keith Symonds, appellant contacted Tompane by telephone for the purpose of soliciting money in exchange for lucre or property that appellant promised to provide in the future. Appellant directed Tompane to send him funds by means of wire transfers. As a result, Tompane wired money from Massachusetts to Rhode Island on numerous occasions. Appellant then pocketed the proceeds but did not send Tompane the promised consideration. Shortly after the grand jury returned an indictment, appellant pled guilty to fifty-seven counts of wire fraud.1 The ____________________ 1The original indictment charged appellant with causing seventy-eight unlawful wire transfers, involving $45,525. A superseding indictment charged him with causing fifty-seven unlawful wire transfers. At the change-of-plea hearing, the prosecutor stated that these fifty-seven transfers involved 2 district court sentenced him to serve thirty-six months in prison, followed by thirty-six months of supervised release. The court also ordered him to pay a $2,850 special assessment and $5,000 toward restitution.2 Luongo appeals from the special assessment. II II __ Multiplicity Multiplicity ____________ Appellant's initial contention is that, notwithstanding his plea of guilty to fifty-seven counts of wire fraud,3 the ____________________ $29,201. The presentence report used the same dollar amount. Be that as it may, the figures specified in the fifty-seven counts, when added together, aggregate $31,180. 2The court levied the special assessment under a statute that reads in pertinent part: * * * (a) the court shall assess on any person convicted of an offense against the United States * * * (2) in the case of a felony (a) the amount of $50 if the defendant is an individual; . . . 18 U.S.C. 3013(a) (1988). In this case, the $2,850 special assessment represents the $50 sum mentioned in the law, multiplied by the fifty-seven counts of conviction. 3The statute of conviction provides in relevant part that: Whoever, having devised . . . any scheme or artifice to defraud, or for obtaining money . . . by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [punished as provided by law] . . . 3 indictment against him suffered from a fatal strain of multiplicity. Consequently, he maintains that his offenses amounted to only a single violation of 18 U.S.C. 1343 and, therefore, merit only a single $50 special assessment. This claim pirouettes around our opinion in United States v. Lilly, _____________ _____ 983 F.2d 300 (1st Cir. 1992).4 In Lilly, we held an indictment charging a defendant _____ with, inter alia, twenty-nine counts of bank fraud under 18 _____ ____ U.S.C. 1344 to be multiplicitous. Since the defendant defrauded a single bank of a single loan through a single scheme, albeit by submitting twenty-nine false mortgages to the lender in perpetrating that scheme, that portion of the indictment "was more comfortably characterized as a single execution of a scheme rather than as 20-some-odd separate executions of a scheme." Id. ___ at 303. Appellant asseverates that he, too, defrauded a single victim through a single scheme, necessitating that we merge the fifty-seven counts in the superseding indictment and construe them as one. We disagree. The principal flaw in appellant's construct is that he and Lilly were charged under different statutes and, therefore, the cases are not fair congeners. Lilly dealt with bank fraud, _____ ____________________ . 18 U.S.C. 1343 (Supp. 1990). 4Appellant also tries to derive sustenance from the fact that the lower court imposed a single 36-month prison term and a unitary term of supervised release. For our part, those features of the sentence do not portend multiplicity. Absent clear language indicating a contrary intent, it is to be presumed that sentences imposed on more than one count at the same time are to run concurrently. See, e.g., United States v. Schulz, 384 F.2d ___ ____ _____________ ______ 374, 375 (5th Cir. 1967). 4 not wire fraud. This is no mere scrivener's discrepancy, for the Lilly court held that the bank fraud statute, 18 U.S.C. 1344, _____ could not be construed in pari passu with the mail and wire fraud ____ _____ statutes, 18 U.S.C. 1341, 1343. See Lilly, 983 F.2d at 304 & ___ _____ n.8. While the former statute criminalizes only the execution, or attempted execution, of a scheme to defraud a bank, see 18 ___ U.S.C. 1344 (rendering it unlawful for a person to "knowingly execute[], or attempt[] to execute, a scheme or artifice . . . to defraud a financial institution"), the latter statutes criminalize specifically enumerated actions, e.g., interstate ____ wire transmissions, see 18 U.S.C. 1343, so long as any such ___ action is for the purpose of executing a scheme to defraud. This salient difference routs appellant's reliance on Lilly.5 _____ Once Lilly is placed into proper perspective, _____ appellant's multiplicity claim is easily dismantled. "It is well established that each use of the wires constitutes a separate crime under 18 U.S.C. 1343, even if the several uses are in pursuance of but one criminal enterprise." United States v. _____________ ____________________ 5Of course, beyond the all-important difference between section 1344's focus on execution of a scheme as opposed to _________ section 1343's focus on the individual (covered) acts undertaken in executing the scheme, there are also factual distinctions between Lilly and this case. Although appellant, like Lilly, _____ devised one scheme to defraud one victim, he procured multiple sums of money through multiple wire transfers. Lilly, however, engaged in one transaction with one bank, procuring one large sum of money in one loan a set of facts critical to the analysis of the twenty-nine counts at issue there. See Lilly, 983 F.2d at ___ _____ 304. We take no view on the purely hypothetical question of how appellant's case might fare if he, like Lilly, had victimized a financial institution and had been charged with bank fraud rather than wire fraud. 5 Fermin Castillo, 829 F.2d 1194, 1199 (1st Cir. 1987). Because _______________ each of the fifty-seven counts laid against appellant reflects a distinct wire transfer of funds, each count describes a separate violation of 18 U.S.C. 1343 even if the transfers collectively comprised a single execution of a single scheme. See id.; United States v. Benmuhar, 658 F.2d 14, 21 (1st Cir. ___ ___ _____________ ________ 1981), cert. denied, 457 U.S. 1117 (1982). On this point, Lilly _____ ______ _____ does not prop up appellant's argument, but batters it, for Lilly _____ expressly reaffirms the Fermin Castillo principle. See Lilly, ________________ ___ _____ 983 F.2d at 303 n.7 ("Courts have routinely construed the mail and wire fraud statutes to criminalize each mailing or use of the wires."). For these reasons, we conclude that Lilly, properly _____ read, is more bludgeon than crutch so far as appellant is concerned. It follows that appellant's multiplicity claim is meritless. The counts of conviction need not be merged.6 III III ___ Construing the Special Assessment Statute Construing the Special Assessment Statute _________________________________________ The second question we must confront is whether 18 ____________________ 6Appellant suggests that the rule of lenity pertains in this case because 18 U.S.C. 1343 does not specifically require that a defendant be punished for each act in furtherance of a scheme to defraud. But a criminal statute must be ambiguous before the rule of lenity becomes relevant. See Bifulco v. United States, ___ _______ _____________ 447 U.S. 381, 387 (1980). As the wire fraud statute is unambiguous, and the principle that each use of the wires constitutes a separate violation of section 1343 has been widely accepted for many years, see, e.g., United States v. Calvert, 523 ___ ____ _____________ _______ F.2d 895, 903 n.6 (8th Cir. 1975), cert. denied, 424 U.S. 911 _____ ______ (1976); United States v. Henderson, 425 F.2d 134, 138 n.4 (5th ______________ _________ Cir. 1970), we have no occasion to engage the rule of lenity. 6 U.S.C. 3013, quoted supra note 2, required the district court _____ to impose the monetary equivalent of fifty-seven special assessments in this case. We think that it did. We begin with bedrock. When "resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to its legislative history if the statutory language is unclear." Blum ____ v. Stenson, 465 U.S. 886, 896 (1984). The statute at issue here _______ provides that a district court "shall" impose the special assessment "on any person convicted of an offense." 18 U.S.C. __ _______ 3013(a) (emphasis supplied); see also id. at 3013(a)(2) ___ ____ ___ (providing for the assessment "in the case of a felony") _ ______ (emphasis supplied). This language admits of only one plausible construction: that a $50 special assessment must be imposed on a defendant who stands convicted of a federal offense that is a felony. And because the statute is phrased in the singular, its terms imply that each offense each felony calls for a separate special assessment, even when a single defendant is simultaneously convicted of multiple charges. The legislative history suggests the same interpretation. The statute was enacted as part of the 1984 Comprehensive Crime Control Act. The Senate Report which accompanied section 3013 states that "[t]he purpose of imposing nominal assessment fees is to generate needed income" to stock a victims' assistance fund, simultaneously created. S. Rep. No. 497, 98th Cong., 2d Sess. 13, reprinted in 1984 U.S.C.C.A.N. _________ __ 7 3607, 3619. Because the aim of section 3013 is to generate revenue, and because construing it according to the tenor of its text will maximize that goal, we are hard pressed to see how the statute can bear a contrary reading. We are not pioneers in reaching the conclusion that, under 18 U.S.C. 3013, a defendant convicted of multiple felonies is subject to multiple assessments. Every court of appeals thus far to consider the question has ruled that the special assessment required by section 3013 must be imposed on a "per count" basis. See United States v. McGuire, 909 F.2d 440, ___ _____________ _______ 441-42 (11th Cir. 1990); United States v. Smith, 857 F.2d 682, ______________ _____ 686 (10th Cir. 1988); United States v. Dobbins, 807 F.2d 130, 132 _____________ _______ (8th Cir. 1986) (per curiam); United States v. Donaldson, 797 ______________ _________ F.2d 125, 126-29 (3d Cir. 1986); United States v. Pagan, 785 F.2d _____________ _____ 378, 381 (2d Cir.), cert. denied, 479 U.S. 1017 (1986). We agree _____ ______ that this is the correct approach. We hold, therefore, that the court below did not err in imposing an aggregate special assessment of $2,850, corresponding to the number of counts of conviction. We need go no further.7 ____________________ 7Appellant's claim that his self-professed indigency affects the validity of the special assessment is not properly before us and we express no opinion on it. Absent an indication "that the government has attempted or will attempt to collect the special assessment while [the defendant] lacks the ability to pay," United States v. Rivera-Velez, 839 F.2d 8, 8 (1st Cir. 1988) (per _____________ ____________ curiam) and there is no such indication in this record appellant's challenge is prematurely posed. See id.; accord ___ ___ ______ Pagan, 784 F.2d at 381; cf. United States v. Levy, 897 F.2d 596, _____ ___ ______________ ____ 598 (1st Cir. 1990) (holding to like effect with respect to a stand-committed fine). 8 Affirmed. See 1st Cir. Loc. R. 27.1. Affirmed. See 1st Cir. Loc. R. 27.1. ________ ___ 9