FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

February 7, 2024

Christopher M. Wolpert
Clerk of Court

_____

DEZMEN DAESHON SMITH,

    Petitioner - Appellant,

v.

SCOTT CROW,

    Respondent - Appellee.

No. 22-5087
(D.C. No. 4:19-CV-00187-GKF-CDL)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Dezmen Daeshon Smith was convicted on one count of first-degree murder by an Oklahoma state jury. The Oklahoma Court of Criminal Appeals (OCCA) affirmed the conviction on direct appeal and later affirmed the denial of postconviction relief. Mr. Smith then sought relief in federal district court under 28 U.S.C. § 2254. The district court denied relief, but this court granted his application for a certificate of appealability (COA) on one issue. *See* 28 U.S.C. § 2253(c)(1)(A). Exercising

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm on that issue. We deny a COA on Mr. Smith's remaining issues.

## I. Background

### A. Facts

In February 2015, Mr. Smith and a rival gang member engaged in a shootout at a Tulsa barbershop, leaving barber Keith Liggins dead and wounding Sheldon Williams, Lawrence Harris, and Randy Pierce. The State of Oklahoma charged Mr. Smith with first-degree murder and three counts of assault and battery.

At trial, several witnesses testified that Mr. Smith shot Mr. Liggins. Mr. Smith claimed he had been at work during the shootout. He later contended his co-workers, had they been called to testify, would have corroborated that alibi. But a police officer testified that he interviewed those co-workers and they told him Mr. Smith was not at work when he said he was. In addition, Mr. Smith contended there were certain witnesses to the shooting who "knew him and would have identified him as the shooter but did not," Aplt. Opening Br. at 23-24, suggesting that if those witnesses were called, they would have confirmed he was not the shooter. Again, however, the record shows those witnesses told investigators they did not see the shooter and therefore could not have testified whether Mr. Smith was responsible.

On the third day of trial (a Wednesday) the judge informed the jury that Mr. Smith's counsel was ill and they were losing a day of trial time. Because of that delay the trial judge warned the jurors they might have to return the next week for deliberations. The prosecutor suggested the alternative of adding a few hours on

Thursday and trying to get to a verdict on Friday to avoid returning the following week. The trial judge asked the jurors if they agreed with that approach, and the transcript reflects that they did.

The case was submitted to the jury for deliberations on Friday at 5:30 p.m. Earlier that afternoon the trial judge had reminded the jury that deliberations would extend later into the evening and that the jurors should plan accordingly by using a long afternoon break to get food, water, or other items to bring back to the courthouse.

At 6:49 p.m. the jury sent the trial judge a note that read: "What is the evidence for which bullets wounded Sheldon [Williams], Lawrence [Harris, and] Randy [Pierce]?" Aplt. App. vol. II at 268. The trial judge replied, "You have all the law and evidence necessary to reach proper verdicts." *Id.*

At around 10:45 p.m., the jury sent a note to the trial judge seeking further direction because four jurors remained undecided and felt there was not enough evidence to convict. As a result, the trial judge called the jury back into the courtroom and gave an *Allen* instruction intended to encourage a deadlocked jury to reach a verdict. *See Allen v. United States*, 164 U.S. 492, 501-02 (1896). The instructions followed an Oklahoma Uniform Jury Instruction (OUJI), except that it

3

omitted the final two paragraphs.[1]  The court did not explain the omission.  Neither

party objected to the giving of the instruction or its content.

---

[1] Following is the instruction in its entirety, with the omitted paragraphs

italicized:

This case has taken approximately 33 hours of trial time.  You have deliberated for approximately 5½ hours.  You report to me that you are experiencing difficulty in arriving at a verdict.

This is an important case and a serious matter to all concerned.  You are the exclusive judges of the facts; the court is the judge of the law.  Now I most respectfully and earnestly request of you that you return to your jury room and resume your deliberations.  Further open and frank discussion of the evidence and law submitted to you in this case may aid you in arriving at a verdict.

This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.  No juror should ever agree to a verdict that is contrary to the law in the court's instructions, nor find a fact or concur in a verdict which in good conscience he or she believes to be untrue.

This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in the spirit of fairness and candor.  If at all possible, you should resolve any differences and come to a common conclusion, that this case may be completed.  Each juror should respect the opinion of his or her fellow jurors, as he or she would have them respect his or hers, in an earnest and diligent effort to arrive at a just verdict under the law and the evidence.

*You may be as leisurely in your deliberations as the case may require and take all the time necessary.  The giving of this instruction at this time in no way means that it is more important than any other instruction.  On the contrary, you should consider this instruction together with and as part of the instructions which I previously gave you.*

*In stating the foregoing, I again repeat: you are the judges of the facts; the court is the judge of the law.  In making all statements made to you I have not, nor do I now, express or intimate, nor indicate, in any way the conclusions to be*

4

The jury resumed deliberations and returned its verdict 90 minutes later. It found Mr. Smith guilty of first-degree murder of Mr. Liggins and not guilty on the three counts of assault and battery. The trial court sentenced Mr. Smith to life imprisonment, as recommended by the jury.

## B. Postconviction Proceedings

Mr. Smith appealed the judgment and sentence to the OCCA. He argued, among other things, that the *Allen* instruction was impermissibly coercive. The OCCA rejected Mr. Smith's appeal.

Two-and-a-half years after his conviction, Mr. Smith filed an application for postconviction relief in Oklahoma state court. The court denied the application, and the OCCA affirmed.

Mr. Smith then filed an application for relief under § 2254 in federal district court. In a comprehensive 49-page order, the district court denied Mr. Smith's application and denied a COA. He then sought from this court a COA on three claims that he wished to raise on appeal: (1) the *Allen* instruction was impermissibly coercive; (2) his state-court appellate counsel was ineffective for not investigating and raising a claim of ineffective assistance of trial counsel for failure to raise an

---

*reached by you in this case, nor do I intend in any way or manner to coerce a verdict, nor directly or indirectly to force a verdict in this case. I only ask that you return to your jury room and, again, diligently and earnestly under your oaths resume your deliberations.*

OUJI-CR 10-11 (emphasis added).

5

alibi defense; and (3) cumulative errors rendered his trial fundamentally unfair. We granted a COA on the *Allen* claim.

We now turn to the merits of that claim and Mr. Smith's remaining requests for a COA.

## II. Discussion

### A. *Allen* Claim

#### 1. Standard of Review

We review the district court's legal analysis de novo, but in doing so "we remain bound by the constraints of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996." *Johnson v. Martin*, 3 F.4th 1210, 1217-18 (10th Cir. 2021). Where the state court has adjudicated a habeas claim on the merits, we are precluded from granting relief unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Mr. Smith argues the OCCA's conclusion that the verdict was not coerced is "contrary to the facts and an unreasonable application of the law under *Allen* and *Lowenfield* [*v. Phelps*, 484 U.S. 231 (1988)]." Aplt. Opening Br. at 19.

The Supreme Court has explained that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) should be accorded independent meaning. *Williams v. Taylor,* 529 U.S. 362, 404–05 (2000). A decision is contrary to Supreme Court precedent if (1) "the state court applies a rule that contradicts the governing law set forth

6

in [the Supreme Court's] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Id.* at 405–06. In contrast, a decision involves an unreasonable application of Supreme Court precedent if the "state-court decision . . . correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A state-court factual determination is entitled to deference if "reasonable minds reviewing the record might disagree about the finding in question." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (brackets and internal quotation marks omitted). In addition, under § 2254(e)(1), we must presume a state court's factual determinations are correct, and Mr. Smith bears the burden of rebutting that presumption by clear and convincing evidence. *See Sumpter v. Kansas*, 61 F.4th 729, 741 (10th Cir. 2023).[2]

---

[2] This court has observed that "[t]he Supreme Court has not yet defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Johnson v. Martin*,

## 2. Merits

The use of an *Allen* instruction to encourage a deadlocked jury to reach a verdict "has long been sanctioned." *Lowenfield*, 484 U.S. at 237 (citing *Allen*, 164 U.S. 492). Such an instruction:

> encourage[s] unanimity (without infringement upon the conscientious views of each individual juror) by urging each juror to review and reconsider the evidence in the light of the views expressed by other jurors, in a manner evincing a conscientious search for truth rather than a dogged determination to have one's own way in the outcome of the deliberative process.

*United States v. Smith*, 857 F.2d 682, 683-84 (10th Cir. 1988).

In determining whether an *Allen* instruction unconstitutionally coerced a jury, the Supreme Court has held that a reviewing court must view the instruction "in its context and under all the circumstances." *Lowenfield*, 484 U.S. at 237 (internal quotation marks omitted). *Lowenfield* is the only Supreme Court case that has addressed the constitutional rule against coercive jury instructions,[3] *see Wong v. Smith*, 131 S. Ct. 10, 11 (2010) (Alito, J., dissenting from denial of certiorari), and because its guiding principle is quite general, state courts have greater leeway in

_____

3 F.4th 1210, 1218 n.4 (10th Cir. 2021) (internal quotation marks omitted). Mr. Smith does not contend that § 2254(e)(1) is inapplicable to our review of the OCCA's adjudication of his claim, so we presume he must satisfy both standards.

[3] Although the district court applied the four-factor test in *Gilbert v. Mullin*, 302 F.3d 1166 (10th Cir. 2002), that decision "sets forth the factors under which a federal appellate court reviews the supplemental jury instructions used by a federal district court," and "is [a] higher [standard] than our more deferential review pursuant to AEDPA," *id.* at 1173 n.3. We therefore need not consider that test separately.

8

addressing coercion claims, *see Renico v. Lett*, 559 U.S. 766, 776 (2010) ("[T]he more general the rule at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway state courts have in reaching outcomes in case-by-case determinations." (brackets and internal quotation marks omitted)).

In *Lowenfield*, 484 U.S. at 234-35, the trial court learned during the jury's sentencing deliberations that 11 jurors believed further deliberations would enable them to arrive at a verdict, and one believed otherwise. It therefore gave the following supplemental instruction:

> Ladies and Gentlemen, as I instructed you earlier if the jury is unable to unanimously agree on a recommendation the Court shall impose a sentence of Life Imprisonment . . . .

> When you enter the jury room it is your duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict if you can do so without violence to that individual judgment.

> Each of you must decide the case for yourself but only after discussion and impartial consideration of the case with your fellow jurors. You are not advocates for one side or the other. Do not hesitate to reexamine your own views and to change your opinion if you are convinced you are wrong but do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

*Id.* at 235 (internal quotation marks omitted). Within 30 minutes of receiving the instruction, the jury returned with a verdict. *Id.*

The Supreme Court held that under these circumstances the instruction was not unconstitutionally coercive. *Id.* at 241. The Court observed that the trial court's

9

*Allen* instruction, which was directed to all members of the jury, was even less coercive than the one approved in *Allen* itself, which specifically addressed the jurors in the minority. *Id.* at 237-38; *compare Allen*, 164 U.S. at 501 (trial court instructed that "if . . . the larger number [of jurors] were for conviction, a dissenting juror should consider whether his doubt was a reasonable one"). Although the Court acknowledged the 30-minute interval between the instruction and the verdict "suggests the possibility of coercion," the defense counsel's failure to object to the instruction "indicates that the potential for coercion argued now was not apparent to one on the spot." *Lowenfield*, 484 U.S. at 240. The Court further noted the trial court's inquiry to the jury was not coercive because it was an "inquiry . . . not as to how they stood on the merits of the verdict, but how they stood on the question of whether further deliberations might assist them in returning a verdict." *Id.*

We agree with the district court that the OCCA's holding that the *Allen* instruction was not unconstitutionally coercive was neither contrary to nor an unreasonable application of *Lowenfield*. As in *Lowenfield*, the trial court here did not direct the *Allen* instruction only to the four jurors in the minority. Rather, it encouraged all the jurors "to give respectful consideration to each other's views . . . in an earnest or diligent effort to arrive at a just verdict under the law," Aplt. App. vol. II at 256—if they could do so without "surrender[ing] their honest convictions as to the weight or effect of any evidence," *id.* at 255. In addition, the 90-minute interval between the *Allen* instruction and the jury's verdict, which is substantially longer than in *Lowenfield*, does not suggest coercion. *See, e.g.*, *United States v. Arney*, 248 F.3d 984,

990 (10th Cir. 2001) (finding no coercion in federal prosecution when jury reached verdict about an hour after receiving instruction). And, as in *Lowenfield*, the defense did not object to the instruction, "indicat[ing] that the potential for coercion . . . was not apparent to one on the spot." *Lowenfield*, 484 U.S. at 240. Finally, the trial judge in Mr. Smith's case made no inquiry or poll as to the jury's division on the merits, and addressed the *Allen* instruction to the entire jury. Although the trial judge knew of the numeric division of the jury because of a note from the jury, the judge ameliorated any concern about unduly pressuring the four minority jurors by addressing the *Allen* instruction to the entire jury. *See id.* at 237-38.

Mr. Smith nonetheless argues the OCCA's decision unreasonably applied clearly established federal law. He makes much of the fact that the trial judge omitted the last two paragraphs of Oklahoma's standard *Allen* instruction. But the instructions in *Lowenfield* did not contain the paragraphs the trial court omitted here, and Mr. Smith has not pointed to any precedent suggesting such an omission renders an *Allen* instruction coercive. More to the point, as the district court noted, the *Allen* instruction in this case contained the same elements as the instruction approved by the Supreme Court in *Lowenfield*. It encouraged the jurors to respectfully consider each other's views in an earnest effort to arrive at a just verdict, but cautioned against surrendering honestly held convictions for the sake of reaching a verdict. *See United States v. McElhiney*, 275 F.3d 928, 944 (10th Cir. 2001) (in addressing the propriety of an *Allen* instruction in federal prosecution, "the admonition on conscientiously held convictions [is] of great import").

11

Mr. Smith also asserts that the OCCA unreasonably applied *Lowenfield* because the trial court gave the *Allen* instruction late in the evening and the jurors were "likely tired after three days of testimony, and hungry as the hour approached 11:00 p.m. on a Friday night." Aplt. Opening Br. at 16. It is true that the instruction in *Lowenfield* was not given to the jury late in the evening. *See Lowenfield*, 484 U.S. at 234-35. But we agree with the district court that the OCCA reasonably determined there was no evidence that hunger or weariness resulted in a coerced verdict. First, the trial judge had warned the jurors that deliberations would extend into the evening and that they should plan accordingly by using a long break to get water and food. Second, two days earlier the judge had raised the prospect that because of an unexpected delay, the jury would have to return the next week for deliberations. The transcript reflects that the jury expressed a preference to stay late to try to get to a verdict by Friday to avoid having to return the next week. Thus, under the circumstances, the lateness of the hour does not suggest the jury "was so hungry and ready to leave that they disregarded their oaths and instructions." Aplt. App. vol. I at 32. Indeed, as the OCCA reasonably concluded, the fact that the jury continued to deliberate for 90 minutes after the *Allen* instruction indicates the opposite. *Id.*

Finally, Mr. Smith argues the jury rendered a compromise verdict and that the OCCA failed to take that circumstance into account. But it is far from clear that the verdict was the result of compromise rather than just the uncertainty of evidence about a confused event. As the district court noted, the jury's first note to the trial judge inquired about "the evidence for which bullets wounded [the three surviving

victims]." Aplt. App. vol. II at 268. The jury's note and its subsequent verdict indicates that while the jurors were convinced beyond a reasonable doubt that a bullet from Mr. Smith's rifle killed Mr. Liggins, they were not as convinced that the other three victims were shot by Mr. Smith.

### B. Remaining Claims

We deny a COA on Mr. Smith's two remaining claims. To receive a COA, Mr. Smith must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). When the district court has denied § 2254 relief on the merits, we must determine as part of our COA analysis whether reasonable jurists could debate the court's decision in light of AEDPA deference to the state-court decision. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

### 1. Ineffective Assistance of Counsel

Mr. Smith contends that he was denied effective assistance of appellate counsel because counsel did not investigate and pursue a claim that trial counsel was ineffective for failure to raise an alibi defense. We are not persuaded.

To prevail on the merits of his ineffective-assistance claim, Mr. Smith must show that his appellate counsel (1) "was objectively unreasonable in failing to raise or properly present a claim on direct appeal," and (2) "there is a reasonable

13

probability that, but for this unreasonable failure, the claim would have resulted in relief on direct appeal." *Fairchild v. Trammell*, 784 F.3d 702, 715 (10th Cir. 2015).

Mr. Smith cannot point to any evidence to support his alibi claim. He does not really dispute that; rather, he argues that he was entitled to an evidentiary hearing at which he could have developed the supporting evidence. But evidentiary hearings in habeas proceedings are not supposed to be fishing expeditions. "The federal district court should not be required to conduct an evidentiary hearing on a claim when the applicant for relief has not presented evidence that would be readily available if the claim were true." *Cannon v. Mullin*, 383 F.3d 1152, 1177 (10th Cir. 2004). The witnesses identified by Mr. Smith as potential sources for his alibi are all individuals personally known to him. One would think that he could have easily obtained affidavits from them. He has not explained why that would have been a problem. Given this lack of diligence in presenting his evidentiary case, there was no error in denying an evidentiary hearing.

Mr. Smith has utterly failed to show a factual basis for his ineffectiveness claim. He has not shown that reasonable jurists could debate the district court's denial of that claim, and we accordingly deny a COA on the claim.

### 2. Cumulative Error

Mr. Smith asserts that cumulative errors rendered his trial fundamentally unfair. The OCCA rejected this claim on direct appeal. "Cumulative-error analysis in the federal habeas context applies only where there are two or more actual constitutional errors." *Thacker v. Workman*, 678 F.3d 820, 849 (10th Cir. 2012)

(brackets and internal quotation marks omitted). The district court rejected this claim because Mr. Smith had not shown that the trial court committed any constitutional errors. No reasonable jurist could debate the district court's resolution of this claim, particularly in light of the deference owed the OCCA under AEDPA. Accordingly, we deny a COA on this claim.

## III.  Conclusion

We affirm the district court's rejection of Mr. Smith's *Allen* claim and deny a COA on all remaining issues.

Entered for the Court


Harris L Hartz
Circuit Judge