**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 23 2005**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DAVID DURAN-SALAZAR,

      Defendant - Appellant.

No. 03-2313
(D.C. No. CR-02-501-BB)
(D.N.M.)

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ARTURO RASCON-GARCIA, also
known as Rigoberto Marquez,

      Defendant - Appellant.

No. 04-2063
(D.C. No. CR-02-501-BB)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **LUCERO**, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendants-Appellants David Duran-Salazar and Arturo Rascon-Garcia appeal their convictions for conspiracy to import and importation of at least five kilograms of cocaine and at least 50 kilograms of marijuana into the United States from Mexico. 18 U.S.C. § 2; 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1), (b)(3), 963. Defendants argue: (1) the evidence was insufficient to support the jury's verdict, and (2) the court coerced the jury by giving multiple Allen instructions, depriving them of their Sixth Amendment right to a unanimous verdict. Exercising jurisdiction under 18 U.S.C. § 1291, we affirm.

## Background

In January 2002, United States Border Patrol Agent Mark Shank was using a Forward Looking Infrared Radar ("FLIR") mounted to his vehicle to observe the border between Mexico and the United States near Sunland Park, New Mexico. V R. at 43. In the early morning hours, the agent observed five people moving around outside a house and nearby shed on the Mexican side of the border. Id. at 43-44. He then saw three of the individuals bend down, appear to pick something up and place it on their backs, and walk towards the international border, stopping just before crossing. Id. at 44. The other two individuals waited outside the house for five to ten minutes, and then they also bent down, placed something on their backs, and met up with the others. Id. at 45. All five then proceeded to

walk in a single-file line across the border into New Mexico. Id. As the travelers proceeded into the United States, the agent saw they were carrying large duffle bags, which their behavior indicated were heavy. Id. at 46.

Upon observing this activity, Agent Shank radioed his fellow agents, advising them of the group's location, Id. at 46, and several agents responded in an attempt to surround and apprehend the travelers. However, as the agents approached, four of the five individuals fled. Id. at 49. The one who remained was arrested immediately, and the others were all arrested within ten minutes. Id. at 136. Agent Shank testified he never lost site of the five travelers from the time he first observed them in Mexico until they were all apprehended. Id. at 51, 76, 108. Upon arresting the five travelers, the agents discovered six duffel bags in the area where the individual who had not fled was apprehended, Id. at 134-35, containing a total of 23.7 kilograms of cocaine and 69.1 kilograms of marijuana. VI R. at 315.

A grand jury indicted the defendants on four counts; however, before trial, the government dismissed the fourth count, VI R. at 383-84, and the defendants were tried before a jury on the remaining three.[1] The jury began deliberating on a Friday afternoon, and then returned the following Saturday morning. After

---

[1]A third defendant, Ignacio Alvarez-Perez, was also tried at the same time and convicted on all three counts; however, he has not appealed his conviction.

deliberating for only 20 minutes on Saturday, one juror told the court's clerk that "she was having difficulty and that she had already reached a decision in the case and that she . . . was not going to be persuaded otherwise." VIII R. at 4. Over objection and a motion for mistrial, the judge sent the jury an additional copy of Instruction No. 11, "Duty to Deliberate." Id. at 5. However, two hours later, the jury as a whole sent the court a note stating, "Judge, we can not reach a verdict." VII R. at 2. Again, indicating deliberations had only proceeded a short time, the court refused to declare a mistrial and sent the jury a note stating, "Ladies and gentlemen of the jury, please continue deliberations in an effort to reach a verdict." Id.

Approximately one hour after encouraging the jury to continue, the court received another note indicating the jury had reached a verdict as to both defendants on count one, but could not reach a verdict as to counts two and three. Id. at 5. The court inquired whether "further deliberations [would] assist [the jury] in reaching a unanimous decision as to all counts," and reminded the jury it could revisit all the issues if needed. Id. at 6. The jury responded that "[w]ith regards to those counts in which we have not reached a unanimous verdict, we, the jury, feel we cannot reach a unanimous decision." Id. at 10.

At this point, again over objection, the court returned the jury to the courtroom and gave an Allen charge. Id. at 11-13. The court stated that the "trial

has been expensive in time, effort, and money . . . . [and] [i]f you should fail to agree on a verdict as with regard to all counts . . . the case is left open and must be tried again on any counts on which you have not reached a verdict." Id. at 11. Continuing, the court instructed each juror to carefully assess the evidence, stating:

> [N]o juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence. But remember, also, that after full deliberation and consideration of the evidence in the case, it is your duty to agree to a verdict, if you can do so without surrendering your conscientious conviction . . . . You may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary."

Id. at 12-13. Within thirty minutes of returning to deliberate, the jury returned a guilty verdict on all counts as to both defendants. See id. at 10, 24 (court gave Allen instruction at approximately 1:10 p.m. and jury had returned its verdict, been individually polled, received parting comments from the court, and been dismissed by 1:56 p.m.).

Two months later, one of the jurors was called for jury duty in unrelated proceedings in which Defendant Duran-Salazar's attorney was also involved. During voir dire, the juror stated that her experience in the present case was very difficult and that "everybody else was against [her], and the judge would not accept a hung jury; so, therefore, [she] kind of felt like [she] had to sway [her] opinion, even though [she] didn't believe it." Duran-Salazar Br., attach. C at 3-5.

The Defendants then filed motions for a new trial, which were denied. Subsequently, Defendant Duran-Salazar was sentenced to 151 months imprisonment and five years supervised release, and Defendant Rascon-Garcia was sentenced to 360 months imprisonment and five years supervised release. Both defendants filed timely notices of appeal.

Discussion

A.) Sufficiency of the Evidence

The Defendants argue that as they were not apprehended near the duffle bags and there was no direct evidence linking them to the bags, the evidence was insufficient to prove beyond a reasonable doubt that they imported the narcotics contained in the bags into the United States. We review sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the government and asking whether a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Campos, 221 F.3d 1143, 1151 (10th Cir. 2000). Upon reviewing Agent Shank's testimony, specifically that he never lost sight of the travelers from the time he spotted them by the house in Mexico until they were apprehended, we find the Defendants' argument meritless.

B.) Allen Instruction

We review whether an Allen instruction was coercive, thus violating the

Sixth Amendment guarantee of a unanimous verdict, on a case by case basis. United States v. McElhiney, 275 F.3d 928, 940 (10th Cir. 2001). In doing so, we consider such factors as "(1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." Darks v. Mullin, 327 F.3d 1001, 1013 (10th Cir. 2003).

We initially note that Federal Rule of Evidence 606(b) prohibits jurors from testifying, or the court otherwise receiving any statement from a juror, about "the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict." The juror's comments in the unrelated voir dire fall within this proscription. See United States v. Tines, 70 F.3d 891, 896 (6th Cir. 1995) (holding that juror affidavit concerning the coercive effect of the court's Allen charge is not properly considered under Rule 606(b)); United States v. Tallman, 952 F.2d 164, 166 (8th Cir. 1991) (holding that Rule 606(b) prohibits the court from considering juror note sent during deliberations alleging coercion by fellow jurors). Accordingly, we do not consider the juror's subsequent comments impugning the verdict.

The language employed by the district court in giving the Allen charge has been previously upheld by this court. United States v. Arney, 248 F.3d 984, 988 (10th Cir. 2001); United States v. Hernandez-Garcia, 901 F.2d 875, 876-77 (10th

Cir. 1990). Likewise, even though the district court gave the <u>Allen</u> charge for the first time after hearing of the jury's deadlock, rather than in conjunction with the jury's initial instructions, we have never prohibited such practice. <u>Id.</u> at 988-89. Further, the short period of deliberation after the <u>Allen</u> instruction was given is also, in and of itself, insufficient to establish coercion; though, as the government concedes, it "suggests the possibility" of such. <u>Id.</u> at 990; <u>see also</u> Aplee Br. at 22. Thus, the key in this case concerns the Defendants' argument that the timing and repetition of the district court's communications to the jury were coercive.

Defendants argue that the district court gave the jury four subsequent instructions after being informed of a deadlock. Duran-Salazar Br. at 19; Rascon-Garcia Br. at 20. This is incorrect. There were only three communications that could properly be characterized as "instructions," as the court's note to the jury asking whether additional deliberations would assist in rendering a verdict as to all counts was primarily a question. And of the three remaining communications, one was simply sending in a copy of Instruction No. 11, which the jury had already received and was bound to follow. This is not properly characterized as an <u>Allen</u>, or <u>Allen</u>-type, instruction. <u>See</u> <u>McElhiney</u>, 275 F.3d at 941. Thus, we are left with two communications–one, a brief request to continue deliberations, and the other, a formal <u>Allen</u> charge.

This court has not categorically prohibited multiple <u>Allen</u> instructions.

- 8 -

See Gilbert v. Mullin, 302 F.3d 1166, 1175 (10th Cir. 2002) (finding that even if there were multiple Allen instructions, there was no coercion). Indeed, the district court must have some discretion in directing the proceedings before it. See United States v. Cooper, 375 F.3d 1041, 1045 (10th Cir. 2004). Here, the jury had only been deliberating a short time before the court was alerted it was having trouble proceeding, and the court only gave one formal Allen charge, using language this court has previously accepted. Further, the jurors were individually polled in open court regarding the final verdict. VII R. at 16-20. Given these facts, we cannot say the court abused its discretion in seeking to have the jury take additional time in attempting to reach a verdict, or that the final verdict was coerced.

Finally, the Defendants filed a Federal Rule of Appellate Procedure 28(j) supplemental authority letter raising for the first time a Sixth Amendment claim based on United States v. Booker, __ U.S.__, 125 S. Ct. 738 (2005). We have previously held that such claims are not properly raised in 28(j) letters. United States v. Maynard, 2004 WL 2407224, at *3 (10th Cir. Oct. 28, 2004) (citing United States v. Kimler, 335 F.3d 1132, 1138 n.6 (10th Cir. 2003)). Thus, we will not address this issue.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge