FILED

United States Court of Appeals
Tenth Circuit

**January 13, 2009**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID DURAN-SALAZAR,

Defendant-Appellant.

No. 07-2146
(D.C. Nos. CIV-06-940-WJ/KBM
& CR-02-501-BB)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge.

---

We granted a certificate of appealability (COA) to consider whether the

district court erred in denying David Duran-Salazar's request for a hearing on his

claim under 28 U.S.C. § 2255 that he was denied effective assistance of counsel

at his criminal trial. We hold that the court abused its discretion in denying the

request and remand for an evidentiary hearing.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Duran-Salazar was convicted in federal district court of three drug offenses, including conspiracy to import drugs. His convictions were affirmed on appeal. *United States v. Duran-Salazar*, 123 F. App'x 946, 950 (10th Cir. 2005). He then filed a motion and request for a hearing under § 2255 arguing, among other things, that his lawyer prevented him from testifying and had he been allowed to testify, there was a reasonable probability that the outcome of his trial would have been different.

The district court denied the motion, including the request for a hearing.[1] It found "[b]ecause it is possible to resolve the issues on the pleadings, and the record establishes conclusively that [Duran-Salazar] is not entitled to relief, I find that an evidentiary hearing is not necessary." R. Vol. 1, Doc. 11 at 2. The court proceeded to the merits and concluded that even if Duran-Salazar was improperly prevented from testifying,[2] he could not prove prejudice:

> I find that there is no possibility that the testimony would have effected the outcome of the trial because the substance of that testimony was in fact plainly before the jury. All three attorneys pursued the same defense, and their coordinated cross-examination and presentation of one witness continually impressed upon the

---

[1] The motion was referred to a magistrate judge whose recommendation was adopted by the district court.

[2] Duran-Salazar's lawyer contradicted the contention that he prevented him from testifying at trial: "Duran Salazar ultimately decided at trial at the close of the government[']s case that he would not testify." R. Supp. Vol. I, Doc. 55 at 2.

jurors their position on the facts that they argued both in opening and closing statements.

*Id*. at 33-34.

We granted a COA on the narrow issue of whether Duran-Salazar "is entitled to an evidentiary hearing on his claim, supported by sworn statements, that he was denied effective assistance of counsel when his counsel refused to allow him to testify on his own behalf at trial." Order, No. 07-2146 (10th Cir. Dec. 18, 2007).

Section 2255(b) provides: "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing . . . , determine the issues and make findings of fact and conclusions of law[.]" The issue of whether Duran-Salazar is entitled to a hearing involves a "two-step inquiry: (1) whether the defendant is entitled to relief if his allegations are proved; and (2) whether the district court abused its discretion by refusing to grant an evidentiary hearing." *United States v. Whalen*, 976 F.2d 1346, 1348 (10th Cir. 1992). As one court has explained,

> [w]e review the district court's conclusions of law de novo and its denial of a motion for an evidentiary hearing [under 28 U.S.C. § 2255] for abuse of discretion. Because an error of law is, by definition, an abuse of discretion, any error of law in dismissing [the] motion for an evidentiary hearing would constitute an abuse of discretion.

*Almonacid v. United States*, 476 F.3d 518, 520 - 21 (7th Cir. 2007) (citations omitted); *see also United States v. Fagan*, 162 F.3d 1280, 1283 (10th Cir. 1998)

("A district court by definition abuses its discretion when it makes an error of law") (quotation omitted).

To establish ineffective assistance of counsel, Duran-Salazar must meet a two-prong test: "[T]he defendant must show that counsel's performance was deficient [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because "[a] criminal defendant has a constitutional right to testify in his own behalf at trial[,] . . . even when doing so is suicidal trial strategy[,] [i]f [Duran-Salazar's] counsel deprived him of the constitutional right to testify in his own defense[,] [s]uch a dereliction of duty by counsel would satisfy the first prong of *Strickland*." *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004). "*Strickland's* second prong – prejudice – is established if there is a reasonable probability that defendant's testimony would have raised in a juror's mind a reasonable doubt concerning his guilt." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Duran-Salazar's sworn statement alleged that "[c]ounsel failed to have [me] testify, when [I] wanted to, [that I] had no agreement with the other defendants." R. Vol. I, Doc. 1 at 8. As support, he notes that his lawyer told the jury in his opening statement that Duran-Salazar would testify on his own behalf, but instead he rested the case without calling him to the stand. He further argues that in light of the difficulty the jury had in reaching a verdict, his testimony that he did not

-4-

know the other defendants and was entering the United States to look for work, could have made a difference. Indeed, on three occasions the jury informed the district court that it could not reach a unanimous verdict on all of the charges and the court eventually gave the jury an *Allen* charge.[3]

It may be that Duran-Salazar cannot ultimately prevail; however, the allegations in his motion coupled with the difficulty the jury had in reaching a verdict are sufficient to entitle him to a hearing. "A defendant's testimony could be crucial in any trial[.]" *Owens v. United States*, 483 F.3d 48, 59 (1st Cir. 2007). But rather than guess at the impact his testimony might have had (assuming he was prevented from testifying), "it is better that it be resolved after an evidentiary hearing[.]" *Id*. at 60.

The dissent argues that no evidentiary hearing was needed because Mr. Duran-Salazar's story is "wholly incredible" in light of the government's evidence. We note first that this was not the basis on which the district court denied the motion. The district court found that Mr. Duran-Salazar's testimony would not have made a difference because the "substance" of that testimony was "plainly before the jury" through counsel's cross-examination of witnesses and the presentation of one witness. We believe this conclusion understates the potential impact on a jury, especially in a close case, of a defendant taking the

---

[3]  "[A]n *Allen* charge is essentially a supplemental instruction given to *the jury* and designed to encourage a divided jury to agree on a verdict." *United States v. Zabriskie,* 415 F.3d 1139, 1147 (10th Cir. 2005).

stand in his own defense and giving his account of the events under oath, subject to cross-examination. That is why our precedents state a preference for an evidentiary hearing in such circumstances. *See Owen*, 483 F.3d at 60. We are hesitant to affirm on a fact-intensive alternative ground, on which the district court did not rely. The "wholly incredible" standard is a high hurdle for an appellate court to leap on the basis of a cold record. Without knowing more about the terrain in which the events of this case took place, the practices of illegals in crossing the border, or the relationships among the co-defendants, we lack the confidence to label as "wholly incredible" the notion that a group of illegals might band together for the purpose of crossing the border together, and might scatter upon confrontation with a border patrol, without necessarily being in cahoots for other purposes.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court

Michael W. McConnell
Circuit Judge

-6-

07-2146, *United States v. Duran-Salazar*

**O'BRIEN**, Circuit Judge, dissenting:

I respectfully dissent. 28 U.S.C. § 2255(b) provides that if the motion, files and records conclusively show that a defendant is not entitled to relief, the court does not need to grant a hearing. In my view, the record conclusively shows that Duran-Salazar is not entitled to relief because even assuming he was prevented from testifying, his allegation that he was not part of a conspiracy is wholly incredible.

The district court summarized the government's evidence at trial as follows:

> Border Patrol Agent . . . Shank testified that in the early morning hours, and from an elevated vantage point using infrared equipment, he spied five images congregating near a house on the Mexico side of the border. The images appeared to him to be men carrying backpacks as they began walking toward the border. Shank directed other agents toward the moving images so the agents could intercept them in a gully after they crossed the border.

> The endeavor was complicated by a moving train that blocked the other agents' view and because some of the images scattered and ran. Eventually five people were arrested. One was located right next to six bags filled with drugs. He was tried with [Duran-Salazar] and another person who were found at least one hundred, and perhaps as far as two hundred, yards away from the bags. Shank testified that, although he did not use the record function on the infrared equipment, the images on the screen were never out of his sight.

R. Vol. 1, Doc. 11 at 5-6.

In the face of this evidence, Duran-Salazar alleged in his motion:

In this case, no evidence exists that any conspiracy to violate laws, together, exists. Evidence shows, to [the] contrary, the parties lived in different locations, and just happened to be at the same location, to enter the United States at the same time.
*Counsel failed to have [me] testify, when [I] wanted to, [that I] had no agreement with the other defendants. . . .*
Counsel further never proved the very issue he r[aised], that no agreement existed. In fact, the matter was not even addressed by counsel . . . even though this is what the defense counsel claimed.

*Id.*, Doc. 1 at 8-9 (emphasis added).

The district court acknowledged that Duran-Salazar's lawyer told the jury in opening statement that "his client would be testifying and telling them how he had crossed the border illegally as he had done before looking for construction work, did not know the other defendants, and was just at the wrong place at the wrong time." *Id.*, Doc. 11 at 30 (quotation marks omitted). Nonetheless, the court found "[b]ecause it is possible to resolve the issues on the pleadings, and the record established conclusively that [Duran-Salazar] is not entitled to relief, I find that an evidentiary hearing is not necessary." *Id.* at 2. In particular, the court found no prejudice in that "there is no possibility that the testimony would have effected the outcome of the trial because the substance of that testimony was in fact plainly before the jury." *Id.* at 33-34.

In reviewing the sufficiency of § 2255 motion, we do not need to accept as true allegations that are "unsupported by specifics [or] wholly incredible in the face of the record." *United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir.

1988) (quotation marks omitted); *see also Owens v. United States*, 483 F.3d 48, 57 (1st Cir. 2007) (holding that "[i]f a district court dismisses a § 2255 claim without holding an evidentiary hearing, we take as true the sworn allegations of fact set forth in the petition unless those allegations are merely conclusory, contradicted by the record, or inherently incredible") (quotation marks omitted). Even if we overlook the lack of detail in Duran-Salazar's motion, he is not entitled to a hearing because the allegation that he "had no agreement with the other defendants," R. Vol. 1, Doc. 1 at 8, is wholly incredible.

Agent Shank testified that using night-vision equipment, he observed five people assemble and cross the border with backpacks. When they were confronted by border guards four of them ran, ditching their packs with a single defendant. Although Duran-Salazar was arrested one to two hundred yards away from the defendant left holding the packs, the witness testified that the suspects were never out of sight. The notion that five people crossed the border with packs full of drugs and ditched them with the same person in the absence of an agreement is "wholly incredible in the face of the record." *Estrada*, 849 F.2d at 1307. Because the record conclusively establishes that Duran-Salazar is not entitled to relief, the district court did not err in denying his request for an evidentiary hearing.

The majority says "[W]e lack the confidence to label as "wholly incredible" the notion that a group of illegals might band together for the purpose of crossing the border together, and might scatter upon confrontation with a border patrol,

without necessarily being in cahoots for other purposes." The statement is telling more for what it omits than for what it says. It fails to take into account the six backpacks containing drugs. Duran-Salazar might, coincidently and innocently, have been crossing the border with a small group of drug smugglers yet unconnected with them and unaware of their purposes. While theoretically possible it would, indeed, be a wholly incredible coincidence.